The next case today is 21-1951, Conformis, Inc. v. Aetna, Inc., et al. Good morning, Your Honors. Anthony Larongo, Kirkpatrick & Lockhart, K&L Gates, LLP. I will be arguing here for the appellant, Conformis. May it please the Court, I'd like to reserve three of my minutes. That's fine. So we are here today, Your Honors, seeking to hold Aetna accountable by seeking redress for Aetna's knowing and reckless product disparagement and tortious conduct through improper means. Aetna improperly mislabeled this Conformis system as unsafe, unknown, unproven, untested, ineffective, not yet established, not approved for general use. Aetna did this through an amendment of a 2018 policy. The numerical reference of that policy was 0660. This policy had been extant from day one of this Conformis-nee system being placed on the market. The policy had been changed within seven and a half years after the product was introduced. During that entire time period, Aetna covered the use, the implantation, and implementation of that Conformis-nee system in over 5,000 of its own subscribers. And over the course of time, over 100,000 folks had been implanted with the Conformis-customized-knee system. Now, I think the backdrop is really important because the case law suggests that when you're dealing with trade libel and tortious conduct in this context, the full appreciation of the full circumstances is in order. Aetna made this change, this flip-flop, from covering this particular knee to not covering the knee, designating it as experimental or investigational, if the court will allow me to just refer to it as EI, in the following context. In 2011, the FDA fully approved the use of the Conformis system as safe and effective. Mr. Rock, I don't want to take you off of how you want to present the case, but as I understand the key legal issue, it has to do with the reasonability of interpreting the statement. And so, whatever the facts are, we have to make a judgment about through what lens we're supposed to be assessing whether it's reasonable. So, if you spoke to that at some point, that would be helpful. Yes, Your Honor, I'll get to it right now. In doing so, counsel, I think it would be useful if you could specifically, the words matter so much here, so could you specifically identify for us, I know it's in the brief, but for the discussion here, the statements that you are focusing on. Yes, Your Honor. So, Your Honor, I'll direct the court to addendum page 15. And I'll quote directly from the district court's language. Good. At the first full paragraph, the district court found, Aetna argues that statements are opinions and are not provably false. In defamation actions, the court looks to how a reasonable reader would understand the statements at issue. The court goes on. Quote, arguably a reasonable patient and perhaps even a health care provider may understand Aetna's statements to be statements of fact. That the conformance system does not, quote, produce a decided, decisive, and desired effect. She continues, and it is not clinically effective. Where Aetna itself has defined those terms as, quote, not proven as effective and safe for most people. Two, not yet accepted by doctors or by insurance plans as standard treatment. And three, effectiveness has not yet been established. So the court below cited specifically to Aetna's definition of EI, experimental and investigational. The court properly interpreted this part of the analysis. She found that it was a series of statement of facts. Our argument is. Council, when you say the court cited the Aetna's own definition, Aetna has two sets of definitions. They have a definition internal to the policy itself, and then a second definition, or series of definitions, which is contained in the logic. Is it your argument that both of those sets of definitions are equally applicable? Or should we look just to the internal definition that are contained in this policy itself? Your Honor, that is a very good question. Number one, I believe that the policy itself does not explicitly set forth a definition of EI. However, if it did, and it was contradictory of what Aetna has specifically defined EI to be on its website and in its glossary, that would be yet another reason for finding that there was a question of fact based upon an ambiguity, and that, therefore, the motion to dismiss below should have been denied. The court properly, at least at this point. Can you just, before we go on to that next point, I just want to understand that. Because as I understand it, there's two possible ways you could be framing the argument. One is just looking at Aetna's, the relevant documents from Aetna, those documents support only one understanding for Aetna to have had. Another possibility is looking at the documents from Aetna. Those documents support the possibility that it's unclear which definition Aetna had. That is correct, Your Honor. Which of the two are you saying is the way we should be taking the case? I'm suggesting, Your Honor, that at least the proper standard is what the district court had set forth here, and that you look at what a reasonable reader would have reviewed and understood the specific Aetna definition. to have been at the time that this policy was changed. The specific EI definition that Aetna had used, which was published to the world, patients, doctors, medical profession, insurance companies, all sorts of payers, was, as I just quoted to the court, those three prongs which the district court had found were factual statements, and we argue they were defamatory factual statements because, as the court found, they were provably false. I don't think you answered my question. With respect, I don't think you answered my question. I'm just trying to figure out whether you're saying that in looking at the case, we are supposed to be assuming that the Aetna documents themselves give rise to one EI definition, or whether you're saying the Aetna documents plausibly give rise to two distinct and potentially inconsistent definitions. Your Honor, the point, it's actually the second point, Your Honor. So you think that the Aetna documents themselves give rise to two possibly inconsistent definitions? Well, you have two points. Number one, you have the Aetna definition, the actual glossary that identifies, okay? And then you have the policy itself, which allegedly relies on a series of studies, all right? And on the basis of those studies, they were basically summaries that were prepared by Aetna's folks. The Aetna took the position that interpreting those studies, that is what EI, we are considering EI. But our argument is, Your Honor, if you look at those studies, they do not support what EI, as defined by Aetna, those three prongs, as defined by Aetna, they do not support those three factual findings. Let me just ask you one last way. Are you saying that the jury, that the right way to think about the case is the complaint plausibly alleges that Aetna had only one definition of EI when it uttered the statements, and that that definition of EI that it uttered is the one that's set forth in the paragraph you just read us? That is the argument, Your Honor. And at that point, if the jury were, at that point, as the district court found, once you find that there are statements of fact, not opinions, you are to stop there based on the standard, and you are to allow the jury to present and address the question of fact. The district court did not do that. It should have stopped right there. The district court went further, however, in the next paragraph. She drew a dichotomy. The proper standard is a reasonable reader, not the reasonable patient, not the reasonable doctor, not the reasonable insurance company, but the reasonable reader. But the district court drew a dichotomy and said, okay, and I'll quote, at the same time, a reasonable insurer or even a health care provider may well understand Aetna's statement of effectiveness as an opinion that the product is not cost effective. Where did that come from? It didn't come from anywhere. It came from the district court, Your Honor. It was raised sua sponte. It was not Aetna's position below. When I was arguing the actual motion, it was, Judge, the district court raised it as an alternative interpretation. It was not supported by the underlying studies, nor was it supported by the- It's puzzling to me, frankly, about the district court's opinion. It specifically says that one reasonable interpretation of the language at issue can be that it is a statement of fact. Another reasonable interpretation is that it could be a statement of opinion. Now, that very ambiguity would suggest that the motion to dismiss should be denied, not granted. But the district court seems to have used that ambiguity in a way that simply is not compatible with the standard on a motion to dismiss. I gather that's your position. That is exactly how we briefed it, and that's how I'm arguing it today, Your Honor. Once she found- she didn't have to go that far. Once she found that there was a question of fact, that these statements were provably, demonstrably false, she should have stopped. But for some reason, she went on, and she raised it sua sponte. I addressed it sua sponte. I said to her, look- Here's, I guess, my puzzle, is if we have a situation, and maybe there's an easy answer to it. If the question is, is the statement intended to be a factual statement or a statement of opinion? Won't that be relevant to the malice inquiry? I think the proper standard is a reasonable- it's objective. It's an objective standard. It is a reasonable read of scienter, as Aetna argues strenuously in opposition. It's what Aetna intended, and that is not the standard, Your Honor. The proper standard, under the case law, under King, under Myers, and a number of other cases, is the objective, the objective reasonable reader. So, look, if a reasonable reader would regard the statement as one of opinion or of fact, that's enough to get you past the motion of dismissal under the portability standard where all written opinions have to be taken and taken as an opinion. That is correct, Your Honor. But can I just- that's where I'm a little puzzled because, one, I could understand that if the statement could be found to be, you know, 51-49, it's reasonably read as a fact. In other words, it can't be read as an opinion. But if it can always be read as both, in other words, the statement is literally inherently ambiguous as to whether it's a fact or an opinion, won't that mean, objectively, it can't be malicious? Your Honor, the- Do you see what I'm saying? Yes. It's sort of an order of operations. Like, one version is we have an ambiguous thing, so we ask people, what do you think? They conclude, oh, I thought it was a fact. Okay, now, given that you thought it was a fact, is there malice? Yes, because you made a misrepresentation about a fact. But the other version is, in concluding that, don't you think it was also reasonable for them to think it was an opinion? Yeah, I think it was reasonable to think it was an opinion, too. So if I'm thinking of it that way, then how is it malicious? Because we never know whether, in speaking, they were speaking fact or opinion. It's just one of these odd statements that could be either. Does that make sense? Well, respectfully, Your Honor, it does not. Okay. Because once you find that they're an objective, reasonable reader, sees these words as statements of defamatory fact. Yeah, I guess it's really a kind of a could or must. So is the jury finding that you must find it to be a fact, or simply that you could? The jury's finding is that you could find it to be a fact. But then if I ask a follow-up question, are you also saying it could be an opinion? And the jury says, yeah, I thought it could be. Either way. That is the tribal issue, Your Honor. And it's based upon – Yeah, but what if the conclusion at the trial is it could have been either? The conclusion at the trial will be the jury will be assessing whether the provable – if we take the objective, reasonable reader statement of facts, whether – remember, the standard is intentional or reckless disregard for the truth or falsity of the statement. And that's where conformists would have the burden, of course, to prove that those statements of fact were not supported by the evidence. And that's what the jury would be assessing. But isn't the real answer to Barron's question that at the trial, the jury, the jury will prevail at the time that it is a statement of fact. But at the proceeding stage, if they could find it. So I think you – I think, Judge, try one more time. We're just having trouble hearing you today for some reason. I think the real answer is that at the trial, the jury will have to find that it is a statement of fact. But at the proceeding stage, it's a loss of the jury every time that it is a statement of fact. Yeah. That is the answer. But I guess just one follow-up to that. Doesn't it – slightly more precise to say, at the pleading stage, they have to be able to plausibly find that it is a statement of fact and not a statement of opinion. That's – Right. Construing the allegations in a light most favorable to – and all inferences, reasonable inferences in a light most favorable. So could you just, on that second point, or that last iteration, one way to read the district court's opinion is to say, I don't think it's plausible on this pleading to think that a jury could find that it is a statement of fact and not a statement of opinion. All you could find from the record is that it could be either or. So what's the – that would at least make – that's the most coherent account of why there would be – let's put it this way. If that was the finding, that wouldn't be incoherent. That would be a correct statement of law. And then the question would be, given the pleadings, do they support the conclusion that inherently it's an either or statement? That would be the analytical framework, however, Your Honor, in this case. So what about the pleadings rule out the idea that there is no plausible pleading here, that it's not an either or case. It's a case in which you plausibly could find it is to the exclusion of it being an opinion. Your Honor, this district court went so far as to make a interpretation of the words to include cost effectiveness. Aetna did not raise that in the motion. It is not supported in the studies. In fact, it's the other way. Conformist system is potentially more cost effective. And nowhere in the actual glossary definition of EI is there any suggestion whatsoever, whatsoever, and Aetna never denied this, that there was a cost effectiveness issue or a cost effectiveness consideration in defining EI. Counsel, just so I'm sure I understand, you say that once the district court concluded that some of the statements at issue could reasonably be interpreted as statements of fact, that's where the district court should have stopped. Correct. But the district court actually did. I think it's what Judge Barron described. After concluding that the statements at issue could be read either as a statement of fact or a statement of opinion, it linked that to the issue of malice. And it said that if you can have these two reasonable interpretations, then you cannot find malice under that circumstance. That is actually what the district court did. Is that correct? That's what it did. But I think the court erred in introducing a concept of cost effectiveness that is just not in the record whatsoever. So it should not have even been part of the syllogism, Your Honor. It should not have been part of the analysis. But there's something, and I think this is Judge Selye's point, there is something incoherent about that analysis in the sense that you only get to the issue of malice if there's been a preceding finding that this can be viewed as a statement of fact, right? No, Your Honor. I think what the point is is that once you get to that finding of a statement of fact, that is demonstrably false, you can't have one or the other. Yes, of course. So then the jury gets to- Those two findings have to precede the issue of malice. Yes, of course. And then it's a question of whether it was intentional or whether there was a reckless disregard for the truth or falsity of the statements that were asserted in defining EI. And that's a jury question. In other words, if I'm following, if you really thought it was an either-or statement, either fact or opinion, you'll never get to the malice question. You'll just conclude that you haven't plausibly alleged that it was a fact. That's right. You'd have an opinion or- And your argument here is that you can say it's plausibly alleged a fact and not an opinion. Correct. Because the only basis for finding that it inherently alleged something that is too close to an opinion depends on importing a bunch of words into the policy that aren't actually in the policy and reading the allegations about what the policy says in the light least favorable to you. And you're not allowed to do that on 12b-6. You said it much better than I did. Okay. I got it. Thank you. Thank you, and may it please the Court. Sarah Harris for the Aetna Appellees. This case presents multiple routes to affirmance. And I'd like to start with product disparagement, which fails for three independent reasons. First is that Aetna's statements are not provably false. Now, I think there's been some conflation of the falsity prong and the actual malice prong. The standard for falsity is whether the statements are verifiably untrue. You do look at the reasonable reader for that situation. And there are two problems with the falsity prong here. One is that policy 660, which is the document from which all of the only sort of statement about custom knee implants flows, is... Counsel, excuse me. Let me ask you about a specific statement and whether it can be provably true or false. Referring to the knee replacement technique here, they are not yet accepted by doctors or by insurance plans as standard treatment. Why can that not be subject to a true or false analysis? Because in the context of that statement, I think you're looking at it... You're saying the phrase experimental and investigational and policy 660 incorporates in the glossary that that statement is prefaced with Aetna considers, which is a classic opinion statement. And the problem is the standard treatment is the kind of vague term that can mean all sorts of different things. And black letter defamation law says if you have that kind of vague term that is susceptible to multiple meanings, then as a matter of law, it is an opinion statement because there's just too much ambiguity going on. This court just... But on that statement, you have to parse that, right? Because, yeah, the statement begins with the word considers, but it's then followed with an explanation of why it would be so considered as experimental. Because their effectiveness has not been established. Why isn't that reasonably interpreted as a statement of fact? That part of the statement, which is quite independent of the considers, that may be seen as an opinion. But Aetna goes on to state, if you will, the fact that supports that opinion. And it seems to me that that statement, their effectiveness has not been established. That's subject to proof. It either has or has not been established. And I think that only makes it actually worse for conformance because if you read the rest of the policy with respect to discussions of effectiveness, I think it falls under the classic case under the Restatement 2nd, Section 566, where if you say the basis for your statement, and you're disclosing all of the facts that underlie the statement of effectiveness, which is the case here, you're summarizing dozens of studies that are the basis for the discussion of effectiveness, then you can't have committed defamation. You have told the person why you think that opinion. What if those studies don't support the statement? What if those studies don't support the statement? What if the studies don't support the statements, then I think you have two problems. One problem is that Restatement clearly says even if your opinion is unreasonable, and you're just wrong with respect to the statements, you've still told the reader why you think that. And so you're giving the reader all of the ammunition they need to say, I think your opinion is silly. You haven't committed defamation as a matter of law. And then second of all, I think that just shows the problem with actual malice, which is a subjective standard. You have to show that Aetna itself subjectively thought the statement was, in fact, false and wanted that false meaning to be conveyed. And I think if you think Aetna actually did think that the studies are debatable, then that is the opposite of what you need to show. In cases like Underwager from the Seventh Circuit and Hip Saver from the Massachusetts Supreme Judicial Court, I think are right on point there. They're saying if you have studies about the hip device and hip saver, and you thought that the conclusions were not being portrayed correctly, that's not the stuff of actual malice. You can debate that, but defamation law does not want to punish that because it's supposed to foster that kind of scientific debate. And again, you can see from the sort of face of the description of the studies, that there could be that debate. And while I'm on the topic of the studies, I think it is important to note, my friend on the other side suggested that there was no basis for this theory of cost effectiveness that the district court is talking about. But if you look at the summaries of the studies themselves, the Beals study, for instance, on Appendix 121, discusses cost effectiveness right from the get-go in the context of comparing how happy patients are. Can I ask you one other statement that is not cast in effectiveness terms, which is that not yet accepted by doctors or insurance plans? Sorry, Judge Barron, I think in order to get to that statement though, you have to accept the proposition that you are, well, first of all, it's modified by as standard treatment, so that's from the glossary, that you'd have to accept the idea that the statement in Policy 660, which is saying the experimental and investigational designation in Aetna's opinion is because effectiveness has not been established, is then modified by the glossary definition to sort of, I guess, then insert another consideration that in general those procedures are not yet accepted as standard treatment. And then we're just sort of, I think, back to the colloquial... But why? That would seem to be something that either... That's just like an empirical fact. Either doctors and insurance plans have accepted it or they haven't. But Judge Barron, I think the problem is that there's a modifier at the end of the sentence. The glossary definition does not just say full stop accepted. It is accepted as standard treatment. But it's actors in the world doing something. They're either doing it or not. You can't have an opinion about whether they've accepted it as... They might have an opinion about whether it's accepted treatment, but they either have accepted it or they haven't accepted it. Doesn't that just seem like a factual binary? No, I don't think that is correct, because I think the concept of standard treatment means they have accepted it as a standard treatment, meaning what? Like they have accepted it as the standard of care, so that you'd be negligent if you didn't do it. They've accepted it as the most commonly prescribed item. However you want it. We could still prove it. One of those things we could prove is not true. Take whatever version you want. But I think the problem is if you can have multiple versions of a definition and only one of them is true... That might go to showing you can't prove that it was false, but it's not as if it's not a fact statement. I think the distinction we're struggling with here is that it's verifiably false. Whatever version you want. Let's say you give me 15 possible things that they accepted. And if I can prove all 15 were accepted, then we would say the statement was false. By saying they haven't accepted it. I think if you could say all 15, you might have a better argument, but I think the problem is there's no sort of like all 15 are not standard treatment. I don't think there's an argument for instance that you would be negligent if you did not prescribe that conformance system. I think quite the contrary. And there's no sort of allegation here. So I think just to back up here, the problem is twofold with the glomming together of all the purported factual statements here. One of them is that the definitions that are bandied about, I take even conformance to be suggesting there's multiple definitions in the air. I take the point that you made on the other statements and how they are representations about an assessment of some standard and maybe that's inherently an opinion for that reason. I'm just saying this particular one is just a representation about what other parties have done. And I don't see how you can have an opinion about that if the other parties either did it or didn't do it. And then if your point is you won't be able to prove that it's false, that's great. That's why we have a trial. Right. I think two problems with that. One is I don't think you can sort of segregate this one particular piece of statement in isolation and say, oh, no, no, all the disclosed factual basis for Aetna's conclusion and Policy 660 don't count. That would be contravening the legal rule in defamation cases. You have to look at the statements in context. And two, I think even apart from our debate about whether this is a falsifiable statement or not, then you get to the actual malice prong, which is a separate and independent hurdle for conformance that I think is a real problem here because they have not suggested in their complaint that Aetna subjectively meant to convey a defamatory meaning with respect to this particular piece. In fact, with respect to their allegations on actual malice, again, all of the statements are sort of thrust together in one unidentifiable mess. And actual malice, as this Court said in the Howard case, is a really high bar for a reason in defamation cases and thus disparagement claims. So what do you mean by the reasonable interpretation has to take into account the context? Are you suggesting that in order to fairly interpret, to reasonably interpret a statement such as Judge Barron just quoted, they are not yet accepted by doctors or by insurance plans as standard treatment, this reasonable reader has to look at all the underlying studies   a statement such as Judge Barron just quoted, are you suggesting that's the context in which this has to be considered? Because Aetna acknowledges that it's looked at a lot of studies. So in fairness to Aetna, all those studies have got to be examined in order to make a judgment about this? Is that what you're saying? No, Judge Lopez, what we're saying is as a matter, and again, this is applying the legal standard at the 12B6 stage, so not sort of taking impermissible inferences. The context of the statements is the policy document, and the policy document recounts the studies as part of the document. So just as in Chang v. Newman, which this court recently decided, the court looked at the whole newspaper article and all the different statements in there to sort of parse the particular pieces that the plaintiff was objecting to, and just as in every other defamation case, you would look at the context of the article and things that it's referencing. You also look here to the actual sort of bullet point summaries that are in this dozens of pages long policy to understand what Aetna is saying in context. And I think that shows both with respect to whether or not you think the statements are not verifiably correct, and also with respect to actual analysis, that you have to do that. And I think if the other side were correct to say that you have to accept simply one reading of a statement as a fact or one reading of subjective intent, you would be turning the defamation law on its head because the legal world... Counsel, for purposes... We're at the motion to dismiss stage. Wouldn't the court have to conclude that looking at the statements at issue in order to survive a motion to dismiss, the reasonable reading has got to be that this is unambiguously a statement of opinion. If that were the case, then I could see granting a motion to dismiss. But here, the district court itself has acknowledged, although in a somewhat different context, that there really are two readings here with respect to some of these statements. Could be reasonably interpreted as a statement of opinion or reasonably interpreted as a statement of fact. Doesn't that inescapably mean that the motion to dismiss has got to be denied? No, Judge Lopez, for several reasons. First of all, it is a question of law whether you think, for instance, that the definitions are too vague to be susceptible to a meeting. That is, again, what Ching v. Newman just said in affirming a motion to dismiss stage, the dismissal of a defamation claim. And second of all, with respect to actual malice, you still have a problem even accepting everything the district court said. If there are multiple different possible meanings of a statement as a matter of law, and this is the Sands case I think is the best example, you can't assume that the defendant wanted the defamatory meaning as opposed to a different one. Unless all of them would have been known to have been false. Unless all of the possible meanings would have been known to be false. If all of the possible meanings would have been known to be false, I would then be resting on the disclosed facts alternative basis because I think we'd just sort of be back in that circle. But that might be more of a jury question. I don't think that would be a jury question. Hold on one second. Just so I follow your argument. Maybe I'll just take the statements that's in the paragraph that your opponent read to us from the district court's opinion and just help me categorize how you're thinking about them. I take it you're saying the statement does not produce a decided, decisive, or desired effect. It is as a matter of law an opinion statement, not a fact statement because of the words used in it. Desired, decided, etc. Is that the idea? I think that's the idea, although I would just take a step back and sort of resist the concept that parsing the district court's characterization as opposed to the actual challenge statements is what we should do. In your view, what are the challenge statements? The challenge statements are first and foremost the statement in Policy 660 that Aetna considers custom knee implants experimental and investigational because its effectiveness has not been established. That is the primary statement. It's the only one that mentions custom knee implants. Then there are two other statements. Let's go on that one. You say that's got to be opinion because of the word effectiveness is too vague. I think it's because the whole term experimental and investigational in cases like CMJ is also far too vague. Even if we didn't agree with you on that because of Judge Lopez's observation that it goes on to say because of effectiveness, are you also saying that the word effectiveness is too vague and that that's as a matter of law opinion? Yes. In addition to that, I think if you look at the body of the Policy 660, it is also fitting into the defamation rule that if you disclose the basis for your judgment... Is it not on to malice? That shows its opinion? This is part of the calculus for whether something is verifiably false or not. I think the false opinion dichotomy can get confusing because I think the question is, is the statement verifiably untrue? The rule in defamation law is that if you have made a judgment and you disclose the basis for your judgment, here are the scientific studies, you can't have a defamation claim even if someone thinks that your opinion or judgment is silly because you have disclosed the reasons for that. If the Court would like me to continue... Can I just ask a question about the business relationship issue? Before you do, I just want to make sure I understand. Was there another statement that, in your view, we have to do the similar analysis to? You just gave one. Is there another one? Yes. The two other statements that I take to be at issue from conformance come from the glossary. There are two sentences of the glossary. One is that it's just a definition of experimental services or procedures. They are not yet accepted by doctors or by insurance plans as standard treatment. That is one of the sentences. The other one is, quote, they may not be proven as effective or safe for most people. Those are the only sort of three statements that have been picked out. Now, they've been sort of chopped in the briefing, but those are the three statements. And that last one you're saying is also opinion? It uses the word may, so I don't see how... Yes, I think it's opinion. And the only one that maybe, on your account, is more like a fact would be the not accepted by? I don't concede that that is more like fact. I think I understand the reasons you are saying that, but I think the standard treatment discussion that we have... So on that one, that's the only one on this account you would even need to get to the malice issue. The other ones are just cut off because they're just opinion as a matter of law. Well, I think all of them are cut off as opinions as a matter of law. I understand. I understand what you're saying in terms of that would be the closest call. And yes, I think all of them then run into the insurmountable hurdle of actual malice. Yeah, if I might, on the interference of the business relationship issue, I mean, I wonder if there was an error of law in the district court's analysis in this sense that the district court basically said that to the extent that Aetna was driven, was motivated by a desire to cut costs, that's a business purpose that they were entitled to invoke, rely upon in publishing these statements about the knee replacement technique. But the black letter law is that Aetna could be responsible for improper interference with the business relationship if the means was improper. Not just the motive, if the means was improper. Now, if they resorted, and I know you insist that we should not find this, but if they resorted to unlawful disparagement of the product, wouldn't that meet the legal requirements of interfering with the business relationship? In other words, the district court erred by simply looking at motive and not considering means. Isn't that a legal error? Well, a few responses. First of all, I think that the district court did so based on the way the case was teed up, given that the focus was on means, or sorry, the focus was on motive as opposed to means, but I don't think that matters ultimately, because even if you thought the district court was sort of not giving proper credit to the notion that product disparagement could count as improper means, there's just multiple independent legal reasons why there is no interference with business relations claims. So any error would be harmless. And I think that is because the other prongs of interfering with a business relationship require... The point is they're full of allegations about the effect of this disparagement on their business. I mean, people are not using this technique to the extent that they were before. And Judge Lipp has, I think, the same case as right on point in saying just alleging a drop in your business writ large is not enough to state this type of claim, or otherwise any time that a distributor and a purchaser gotten into a dispute in which one of them did something that hurt the other's business, you'd be able to state a claim. It's not enough to know that someone has business writ large in the world. Interference with business relationships is sort of a parallel torch to contractual interference, and the reason it requires specifically knowing about business relations that are going to happen prospectively and pleading that is otherwise, again, it becomes a torch against the whole world any time one business does something that seems to hurt the other. And the thing that's missing here are very specific allegations about what are the specific prospective business relationships that were going to happen. Often this is pled as sort of, I was about to conclude a contract with a third party. I didn't have the contract. I had a reasonable prospect of it. You, defendant, swooped in, knew about that relationship, and interfered with it. And so just saying that my product was used less doesn't show again here what you need to show, which is that the actual designation as experimental and investigational was somehow the thing that drove people away from very specific known relationships with conformists that Edna actually knew about. Judge Selya, do you have anything further? No. Okay, thank you. I believe, Judge Lopeza, you hit the nail on the head with respect to the tortious interference analysis. The disparagement is the improper means. It's pled all over the complaint. It was fully briefed, and it was argued thoroughly on the motion to dismiss. The court found that the allegations that we set forth in the amended complaint, which we amended as of right, by the way, were sufficient with respect to the damages aspects of those I'll move on. Your Honor, Chief Judge Barron. Before you move on, what expected business relationship did you specifically identify in regard to that case? If I understand your Honor, I think what you're referring to is the paragraph or series of paragraphs where we allege that we had over 2,100 contractual relationships with hospitals, hospital systems. The number of the paragraph has escaped me at the moment, but it was specifically and substantially certainly alleged, and the court found that. That was adequate. Don't say the court found that. We're not reviewing the finding of facts. We're on de novo review. Yes, Your Honor, I understand that. I don't see any specific identification of respective business relations. I understand you've alleged a sharp decrease in your business, but I don't think that's enough. Your Honor, our interpretation of the case law is that if you allege substantial certainty of these relationships to exist, that is sufficient. However, if given the opportunity to have our day in court, I would be more than happy to further specify in allegations and a second amended complaint. Thank you, Your Honor. Chief Judge Barron, you made with respect to that question of fact as to use by generally accepted. Is that a statement of fact? Of course it's a statement of fact. It would be helpful for me to hear you on the two other statements that were raised, the effectiveness statement and then the other piece of the glossary definition that's not the accepted one. I understand how to think about whether the accepted one is a factual statement and what that means about how we then think about malice. But on the other two, my understanding is the argument is they're just inherently opinion statements because of the fuzziness of the word effectiveness. There is nothing fuzzy about the word effectiveness if you read the definition, Aetna's definition of EI and if you read what the policy says. Devoid of, in either section, is there any mention of cost effectiveness. It's totally clinical effectiveness. Does it use the word clinical? No, it does not, but it's the only reasonable interpretation and here's why, Your Honor. Cost effectiveness was not necessarily studied in any of those studies. Last question on this is from me. Is there some objective test for clinical effectiveness that makes that a fact statement? FDA approval, safety and clinical effectiveness, Your Honor. And does the reference to clinical effectiveness have to mean FDA approval? Not necessarily, but they're not mutually exclusive either. And that is what FDA approval really looks at, it's safety and effectiveness. And also you look to paragraph 125 of the complaint where Aetna's own expert who was reviewing a peer-to-peer review, Dr. Ille, I-H-L-E, he was with Evacor, but he was for purposes of peer-to-peer review with Dr. Wirtz, who was Mr. Schaub's doctor. He was appealing the denial. Dr. Ille, paragraph 125, admitted to Dr. Wirtz that there's nothing wrong with this conformist system. I implanted it 60 times and I find it safe and effective. Thank you, Your Honor. That concludes argument in this case.